Fourth case this morning, which is Pantoja v. Portfolio Recovery Associates. Good morning, Your Honor. Joel Bertocchi on behalf of the Defendant and Appellant Portfolio Recovery Associates, LLC. The District Court granted plaintiff summary judgment and denied PRA summary judgment motion on two bases, and I'll talk about them both. As to the first basis, the prospect of legal enforceability of the debt, the District Court thought and the plaintiff argues that McMahon controls, or I guess what is now McMahon 1. McMahon does not control for two specific reasons. First, McMahon was a case about pleading. This is a summary judgment case. It requires an analysis of what could be proved at trial, and it is our submission that this case presents at best a question of fact. The second is because the letter in this case was very different from the letter in McMahon. The letter told Mr. Pantoja that PRA would not sue him, and told him why, because of the age of his debt. How does the mention of the age of the debt change the words will not sue to cannot sue? Your client chose the words will not sue for a reason, and I am afraid that that reason was to leave in the reader's mind a nagging question about whether you could change your mind and sue. Your Honor, that is an interpretation. I think that, I don't think that the language about the age of the debt was necessary to make this, to take this out of the realm of question of fact, but I do think that bringing up a characteristic of the debt that was not going to change suggested it was some sort of limitation, and the plaintiff, at least the plaintiff himself, agrees that's the way he read it. Again, Your Honor, we're not. Mr. Bertocchi, does anybody pay in response to this type of letter? I think some people do, Your Honor. I don't have. Why isn't that evidence? Why isn't that evidence then that it's confusing and misleads some people because you would not pay in response to this unless you were misled or confused or worried about the prospect that you might get sued? Your Honor, people might pay for other reasons. Like? Like, gee, it's a moral obligation. I should pay it. A moral obligation? The debt is still owed. How, how, oh come on, how, this, this has got to be the worst kind of debt I've ever seen, but how much did you guys pay for this $1,900 account? I don't know, Your Honor. I would be very interested to know that if the case, if any further proceedings are needed, but this was 20-year-old debt, right? I think that's right. For a never-used credit card, just fees on a never-used credit card. Your Honor, these were, these debts are bought in large portfolios. I understand. You wouldn't want to spend any time poring over the details of this or pay a nickel for it. Let me ask this, because I, I guess my concern, Mr. Bertocchi, is that you know, we have in McMahon the FTC's conclusions with, that, that very few consumers actually understand statutes of limitations, and it seems to me to, if I could follow up on something Judge Rovner said a few minutes ago, that by merely creating any ambiguity, ambiguity which is your best position in this case, that the ambiguity itself indicates that the, that the letter is misleading. Your Honor, I think... Because nobody else would pay in response to this. I think you're reading the prospect of the question of fact out of it, and again, I would point to the fact, although it doesn't, I agree it doesn't win the case for us. There's only one unsophisticated consumer's input in the record, and that unsophisticated consumer is the plaintiff. Well, he's sophisticated enough to have gone to a lawyer. Well, okay, fine, but also sophisticated enough to say, I know you can't sue me, because if you could, you would. That's an interpretation. I don't know whether that a survey would have showed the same thing, but that interpretation suggests that our interpretation is one of the reasonable ones, and it's a question of fact. I think it is a little bit... I feel like I'm in Alice in Wonderland. I've got to tell you, you argued at page 17 of the blue brief that even an unsophisticated consumer would have understood that his debt would be extinguished if he had accepted Portfolio's offer, but his debt was already extinguished. It was uncollectible under the, you know, under the long-expired statute of limitations, and that seems to me to be an admission that the letter implies a collectible debt still exists that needs to be resolved. Your Honor, the law is quite clear, and the plaintiff in this case has not argued otherwise, that a debt remains a debt and remains owed even after the statute of limitations expires. That is the law in pretty much every state I've ever looked at, including Illinois, and I've looked at a few others, and that is why it is not illegal to try to collect on a debt like this. Are you saying that this is a collectible debt? Yes. It seems to me that his debt was already settled for good by the passage of time. No, Your Honor, it was a collectible debt. There was no, there's no claim in this case that just sending a letter would make, was illegal. You can try to collect a debt that's 100 years old. You can't sue on it if the statute of limitations has expired, but you can ask, and that's what this letter did. And this letter allayed the plaintiffs, the fear that these cases, cases like McMahon talk about, by telling the plaintiffs that he would not be sued, and telling him why, which I think is just an add-on. That is the concern here. A person who knew he wasn't going to be sued wouldn't be concerned, as concerned about why he wouldn't be sued, and there is no claim. I'm sorry. I'm sorry. I'm trying to watch if you're moving. No, I'm sorry. The letter does not tell the consumer that the debt is time barred. No. And you cannot sue to collect it. The letter implies that you have simply chosen not to sue. Your Honor, I respectfully disagree. I think the letter tells him that he can't be sued. I understand that it might be interpreted the way you're talking about, but the difference between cannot and will not is not enough of a difference to take this case out of the notion of a question of fact. How much does a consumer survey cost? You know, I don't know that, Your Honor. I've never, Mr. Hector may know, because when they're done, they tend to be done by plaintiffs more often than defendants. Sure. My recollection from cases where they were presented was at least $10,000, usually more than $20,000, and that was now some years ago. Yes, Your Honor. So in essence, what you're arguing for here is an impossible burden. No, I don't think so, Your Honor, and this court in a number of cases has said, why don't you do surveys to try to prove this? No, I would say class actions can support that. I would say you're maybe lucky that this was not a class action. Your Honor, plaintiffs' lawyers face the prospect of fronting costs, and don't forget, if they win, then they get it back. So that's a little bit of an incentive to go ahead and take the risk if you think the case is worth it. But plaintiffs' lawyers have to front costs all the time. They have to pay for experts in med mal cases or legal mal cases or securities cases. Sometimes you have to spend a little money up front. Where damages are $1,000, though. And Your Honor, also, considering that we're talking about... Mr. Pertocchi, could I ask? Of course. If somebody makes a payment in response to this letter, is there any consideration given in response for that payment? Well, I suppose it depends on the payment they make. Suppose they make the $60 payment that's plans that were proposed in the letter, then I suppose the consideration is that the rest of the debt goes away. Well, wouldn't you then be in a very good position, your client would be in a very good position to say, you've accepted our offer, and so we now have you bound to a contract to pay, let's see, a total of $511 by May 17th, and you owe nothing more because you breached that new agreement. No, Your Honor, there wouldn't be a new agreement because one of the terms of that agreement would be, we're done. No, no, they've breached that new agreement. The payment would be made in the context of saying, I've made this payment, and you've told me my debt is accepted, we're good. Your letter says once the full settlement payment is received, your account will be considered settled in full. You're talking about just the initial payment. I'm talking about somebody making the down payment that's asked here, and that then triggers, at that point your client has hooks into this person on this ancient debt. No, they don't, Your Honor, because, and the District Court's conclusion on this point is a flat misstatement of Illinois law, because there are two... No, no, no, the question is not about the whole original debt, although I think there's some ambiguity there, but about whether that payment isn't a promise to make the, let's say the payment is $45 down payment, and then that's a promise to pay $104 consecutively for six more months. Your Honor, that's a new argument, and I just mentioned that in passing, but I don't think it would. I think that this letter... I'm sorry, Judge, go ahead. I was going to say, this letter talks about the consequences of making a certain set of defined payments. It says nothing about what would happen if you make a difference. Of course it doesn't say that. If you explained what was happening, and how old the debt was, and what the legal consequences were, nobody would make a payment in response to this. Under Illinois law, if you don't have an express agreement, you don't restart the debt. You have an express agreement, however, for example, with a $40 payment to pay $60 consecutively for the next 12 months. That's the offer that your letter extends. It's accepted by sending in the payment, right? Yes. Well, I don't know that, Your Honor. I think that that... It's pretty darn clear. That would be a payment that wouldn't be what the letter outlined. So then you've got a breach of a new agreement, you start everything all over again, and you've got this zombie debt, or this is actually deader than zombies, I think. Yeah, zombies aren't all that dead, if you watch... Okay. Well, this would turn this back into zombie debt that would revive them. Okay. Thank you. What do you mean by, we're offering you the opportunity to lock in this settlement offer with a low down payment of $60? Right. One of the proposals is to make a series of payments, but the letter doesn't say anything about making a payment of another kind. And so I don't think you could apply a new agreement. Down payment seems like only a part. If it's right, it is. And if he made the rest of the payments, then he would be doing what the letter talked about. But what Illinois law says is you have to have some context to recreate the debt, or to make it actionable again, and you wouldn't have that context in any payment that was not what the letter described. And the down payment isn't all, as you pointed out. Thank you, Your Honors. Thank you, Mr. Detective. All right. Good afternoon. May it please the court. I'm Matthew Hector on behalf of Manuel Pantoja. On Tuesday in the second McMahon v. LVN v. Appeal, this court reaffirmed that debt collection letters must disclose that that is time barred when offering a settlement of that debt. But that, don't try to read too much into that. Okay. It's on the pleadings. It was on the class. You've got a different procedural posture here. We do believe, though, that this is an important consumer protection. Unless a consumer is told there's a concrete legal bar to collecting a debt via lawsuit, the unsophisticated consumer may embark on a payment plan without understanding the full effect of their actions. In effect, the PRA needs to make an affirmative disclosure that the debt is time barred. Saying that would and could is a small distinction is a little disingenuous. My daughter says she won't do things all the time and still does. So, you know, something that can't be done is different than something that won't be done. I can't fly. It doesn't mean that I won't someday learn to fly a plane. At any rate, these collection letters are part of the business of high volume debt collection undertaken by companies who buy old and charged off debts from creditors. This is a classic disproportionate relationship of power scenario. Many of the targets are consumers who are financially on the ropes and exposing them to this additional legal liability can have disastrous results. The effect of the letter at issue in this case is to expose consumers to unexpected risk. If they default on one of the three proposed payment plans, they expose themselves to liability either for the lesser amount or the full amount owed. Moreover, in this scenario, a consumer would be hard pressed to understand or explain any kind of defense to a state court judge. Certainly, Mr. Pantoja had paid the initial $60 and then failed to make more payments. PRA could have filed a lawsuit at the Daily Center and shown a last payment within the five-year statute of limitations for him to then come in and explain that, well, this, you know, this debt was so low, I shouldn't have had to pay it in the first place. At that point, probably means nothing or at very least, it would be difficult for him to explain that. I know that we've made a little bit of a deal about Mr. Pantoja's understanding of his own case. Certainly, I think that in this court's opinion and lots of the CDA, we've addressed exactly this tactic from this exact same offer, which is that the individual consumer's opinion is not relevant to the objective standard of unspecified consumer. The question he was asked had no time element to it, and so we weren't talking about his reaction when the letter was received so much as we were talking about his understanding of his case after hiring a counsel who explained his case to him. If you're an average unspecified consumer who does not have an attorney, I don't think we'd be able to draw those inferences. Mr. Hector, a voice from somewhere. Am I incorrect that Mr. Pantoja's debt was already extinguished and uncollectible under the statute of limitations? You are not incorrect that it was uncollectible under the statute of limitations. I guess he could have decided to pay it on his own, but there would have been absolutely no legal recourse that PRA could have availed itself of, state or federal court, to collect this debt. That's only, though, it's an affirmative defense, right? Well, correct. I guess they could have sued him on the time bar debt and risked being sued. Doesn't that happen? I'm sure it does. Maybe not with debts this old that often. I'm sure that it does. But you can get a default judgment on an old debt if somebody doesn't show up to assert the statute of limitations. That's correct. That's a serious problem. It is. I would agree that this is exactly why these kind of letters need to disclose the exact legal rights of the consumer. They need to be able to make an informed decision. I would liken it to participating in a clinical trial at a research hospital. You have to have informed consent before a choice can be made. And in this situation, Mr. Pantoja or any other consumer who had received this exact letter, the one that's in the appellant's appendix, page 9 and 10, would have no idea that they had rights in this situation. So let's say they ignored the letter and then a subsequent lawsuit is filed. They wouldn't even be able to begin to articulate that affirmative defense without some knowledge that it exists. Are you aware of any evidence, Mr. Hector, as to whether payments are made in response to this form of a letter? No, I am not, Your Honor. How much would a survey cost? My sense would be at least $10,000. We have not had to conduct one yet, but I have done some initial looking and it seems rather expensive, especially for an individual litigant. And I would argue, again, that PRA has chosen to use this language in this letter. There is the, as Judge Gettleman notes, the asset acceptance consent order that would have allowed it, you know, that uses language that's very clear. They could have said, the law prevents us from suing you on this debt. By reason of passage of time, this debt is no longer enforceable. And both of those disclosures would have passed an FDCPA list for sure. But those choices were not made. I believe this letter fails to make an affirmative disclosure. It is facially deceptive. Again, as to the extrinsic evidence issue, I think that locks BCDA is relatively clear whether Mr. Pantoja believed this to be deceptive at his deposition is immaterial. And certainly, you know, a consumer survey in this context, I don't know what good it would do. We're leaving the participants in the survey to guess at the meaning of language that's not there. You know, and that doesn't seem to be very conducive to a survey and sounds like really bad science. So for these reasons, unless the court has any more questions, we request that the court affirm the ruling of the district court and remand for further proceedings on damages. Thank you, Mr. Thank you. I talked to give you another minute. Your Honor, our position, as we said, is that Mr. Pantoja was told it was a concrete bar. There is more than one way to say it. That's why you have questions of fact on what collection letters mean. That's why you have surveys. Surveys are expensive. There's no case I know of that says that when the issue is liability, particularly when the issue is going to be the view of a hypothetical objective consumer, that the burden of a class action plaintiff is different from the burden on an individual plaintiff. That would be a very strange rule. The theory that we're talking about, about the new, that the court raised and that Mr. Hector addressed, about concern over some sort of new agreement as opposed to providing the statute of limitations as a new theory, was not pled. It's not argued to Judge Gellar. The debt, with all respect to Grover, and you know how much respect I have for you, the debt is collectible. If collectible means you can try to collect it. If it wasn't collectible, count one of Mr. Hector's complaint would be, you sent my client a letter asking him to pay, and that's illegal. But it's not. You can ask, and that's what this letter did. You can also go with a gun to someone's head. You can do a lot of things that are not ethical or correct. Well, you are allowed in every State to try to collect a debt. A debt, even after the statute is run, the debt is owed. In the industry, Judge Hamilton, people do not sue on time-bar debt. It doesn't happen. Never? I can't say it's never happened. But as an industry practice, and we do a lot of work in that area, they don't do it. It's not worth it. For no other reason that it's not worth it. I thought the FTC had looked into that. I'll take a closer look. OK. And finally, Your Honor, the asset acceptance agreement is not a case. It does not hold that that language is required. What is required is that you tell the plaintiff that what is required after McManus is that you tell the plaintiff that he's not going to be sued. And that's what this letter did. And that's how he interpreted it. And while I agree with Mr. Hector that that's not conclusive, it's the only evidence from any consumer in the record that addresses this letter. The Walker case says you've got to talk in your evidence about, if it's a question of fact, about the letter in particular. Thank you. Thank you for the extra time, Judge. Thank you, Mr. Treffy. Thanks to both counsel. And the case will be taken under review.